2017-14-07 Good morning. May it please the Court, for the record, I'm Robert LaFranchi on behalf of Plaintiff Appellant Thyssenkrupp Steel North America. Your Honors, Customs wrongly assessed dumping duties on Thyssen's steel imports, despite the fact that the dumping order had been previously revoked pursuant to a sunset review. I'd like to address two main issues today. First, the lower court has jurisdiction over Customs' denial of our protest. Second, the Department's revocation instructions were unlawful as written and In addressing these issues, I will demonstrate that Customs exceeded its ministerial role in this case, and it did so by substantively interpreting the revocation instructions in a restrictive manner and in a way that improperly excluded Thyssen's entries from the reach of the revocation. The revocation instructions here don't tell us what the interpretation of unliquidated is, right? They do not. So your contention is that that's a construction that Customs put on the commerce instructions? That's correct. We believe they clearly substantively interpreted the meaning of the word unliquidated. The record shows they had no guidance on that. They did it on their own. They did it substantively. And as we point out in our briefs, they specifically interpreted the term unliquidated to exclude those entries based on the, they drew a distinction between an unliquidated entry on the one hand and an entry that had been liquidated, but whose liquidation was not final due to the filing of the protest. Importantly they analyzed legal precedent in doing this. Can I ask just on the jurisdictional point? Sure. Is it, excuse me, is your contention that 1581A jurisdiction attaches to the original, what is it, October, November? The original... 2012 or to the, I guess, December 2014, 10 page substantive interpretation of the commerce order, followed by the, a few weeks later, the port's rejections of your protest? Our contention is that we protested the liquidation, which is what we were authorized by law to do. That was a combination of all of the information that Customs had before it, at any time relevant to our protest. This included the original automatic assessment instructions, which were not... When you originally filed protests for the original liquidations, if you can focus just on that for a second, and I know you don't want to, and you shouldn't end there, but for the moment, focus just on that. At that point, the only decision Customs had made was, I guess, not what we would call a decision under 1514, because there was no dispute about the meaning of its instructions. I think at the moment we filed our protests, which was, in some cases, two weeks after the second set of instructions came out, and in another case about a month after, we were protesting the fact that Customs had not applied the second set of instructions to our entries. They had looked at that set of instructions... Wait, I thought your original protest preceded... Can you just get the time right? No, the sequence was, the automatic instructions came out, let's say, in October, six months later in April, in 2013, the second set of instructions came out. The entries had liquidated in the meantime, pursuant to the first set. We saw the second set of instructions and said, well, Customs should apply these instructions to the previously liquidated entries, so we protested after the second set of instructions, and so the protest was, Customs made a decision not to apply the second set of instructions to the previously liquidated entries. Now, our view is that all of those decisions merge into our protest. That includes the decision to originally liquidate the entries, the decision whether to do it or not to do it, at that time, to apply the second set of instructions. Somebody had to look at the second set of instructions and say, oh, these don't apply because we previously liquidated the entries. Okay, that's a decision that was made. In addition to that, as we filed the protest, there were three different reactions from the courts. The court of Detroit granted the protest, they approved it. The court of Philadelphia... It seems to me there's a question of jurisdiction, and then there's a question of what's the right answer to the question, were these entries unliquidated or not? I understand, I think, that after the second set of instructions, the April 4th, 2013 instructions, it took a year and a half for customs to figure out an answer to the question, what do we do about that? That's a real decision. That's not ministerial. That was a real decision. Correct. How does that get you back to just on the jurisdictional question, the original challenges that you've got? The original challenge is that prior to that decision from headquarters, someone at the port, in theory, had to look at the second set of instructions and decide they didn't apply to those entries. That was the decision, I think, that ultimately gives jurisdiction. It was a decision made. Either it was a decision not to do anything, or more likely than not, there was a decision that the second set of instructions didn't apply because the entries were liquidated. Do we have any cases where there's been a protest and a change of circumstances or a final decision? You mean specifically with regard to anti-dumping cases and sunset reviews? Yeah, I mean, I don't know if you're familiar with carbon-activated, maybe not. I'm not familiar with that. It has to do with the question of whether you can protest a decision and raise the question of whether the wrong anti-dumping duty was applied, even though the anti-dumping duty was not determined until after the protest. There are other differences that might make that case distinguishable, but I guess I'm just wondering whether this has come up. It doesn't seem to me that 1581I provides you with a remedy because you have no challenge to the commerce instructions, which are just in the language of the statute. So if you're going to have a remedy, it would have to be the protest remedy. We agree. I mean, to answer your question, I'm not aware of a case like that. I am aware that I believe sometimes there have been situations where Customs has changed its policy based on a subsequent letter ruling and perhaps has applied that to a previous protest. I can't provide a citation at the moment. To get to your other point, we agree that we think our main avenue of jurisdictional challenge is the protest. We filed our alternative claim under 1581I, anticipating we might get a disagreement as to whether we have jurisdiction. We did so because we think the same substantive legal question could be answered under either jurisdictional prong, although we think the proper avenue is 1581A, specifically for the reason you state, which is that otherwise a party might be foreclosed from having review of that decision, particularly what happened here by the lower court by stating or finding that our protest was not denied, it was rejected, and doing so leaves us in a state of limbo. What else are we supposed to do? We think under the statute, Customs only has the option to approve or deny the protest, not to reject it. And even if it is going to reject it, that should be considered a denial, at least for jurisdictional purposes. I believe defendants don't even dispute that. They can speak to it when they are here, but they certainly did not embrace that part of the lower court's reasoning. So for all those reasons, we think that the decision was clearly substantive, not ministerial. The protest was timely, because it was based upon the fact that the entry of the... The government's arguing that it's untimely now, right? That's correct. So what about the meaning of unliquidated in the statute? Yes, well, the term unliquidated is not defined in the statute. We haven't found it defined anywhere. What we have argued is that if you take a simple reading of the text of the protest statute and the relevant CBP regulation that defines liquidation, and if you read those together, it indicates that filing a protest prevents a liquidation from becoming final. The lower court focused more so on whether the decision by the Customs Service is final, and we agree that that is part of the analysis. But we also believe that Customs ruling has made clear that it's also the liquidation itself that's not final. So the act of liquidation is not final. And so if a liquidation is not final, then it should be treated the same as an unliquidated entry. Customs refers to... So basically you're relying on these two regulations to define what means unliquidated. There really isn't any guidance in the statute itself. The definition of unliquidated is not in the statute. There's no definition of it. We don't have a definition. What we are relying on is the juxtaposition and the interpretation, the plain language, of the statute read in conjunction with the regulation, as well as Customs rulings, which we have cited in our brief, including HQ H030656, HQ 223320, which basically hold that a protest prevents a liquidation from being final. It's been referred to as pending before Customs. And as I said, Customs refers to it as open. So we want to think about it in terms of it's either liquidated or it's not. It's kind of a semantical position that's been taken by Customs to say on the one hand, well, it's liquidated, but it's not final. But that's not the same as unliquidated. We think clearly the term is not defined. But we think if you're going to define the term, you should look at the broader purpose of this situation in terms of the sunset review, which is supposed to be interpreted broadly to effectuate revocation to further the goals of the statute. And as we pointed out under Article 11.3 of the WTO, if a revocation is effected, it should be effected to eliminate duties no later than five years after the order was imposed or the most recent extension of the order. And in our case, the way the term has been interpreted, due to the retrospective nature of a sunset review, duties were actually collected for five years and five months. And this is because of that six-month time period after February 14th, when the entries came in while the process was ongoing. And then when we noticed that, we filed a protest after the liquidation instructions came out. We followed the mechanism that's in place, and we provided the argument as to why the revocation should apply to those entries. And we think it effectuates the purpose of the sunset review. And so, but to answer your question, there is not a specific definition. In the statute? In the statute, or anywhere. And I think the defendant has resorted to a textbook, and so there's no definition. But we think the better approach is to look to the purpose of a sunset review and to look to the fact that by interpreting it narrowly as Customs has, it imposes duties for longer than five years. Another point I see, I'm moving into rebuttal, I just wanted to make a final quick point, which is that one thing the lower court had not focused on is that the instructions issued by Commerce in this case were contrary to the instructions that we're aware had ever been issued in any prior sunset case by inserting this paragraph talking about unliquidated entries. It's not clear why they did it in this case, but we mentioned several other instances in our brief, including ferrovanadium from Russia, cement from Norway, where the instructions did not discuss unliquidated entries. And with that, I'll reserve the balance of my time for rebuttal. Thank you, counsel. Mr. Miller. May it please the court. The trial court's dismissal of these claims. Does the government contend that in deciding a protest that Customs is confined to deciding it on the grounds that were available to the protester at the time the protest was made? Or is it your view that Customs has to take into account subsequent developments? Such as here, the Sunset Review decision. Certainly the agency is obligated to consider the arguments that are raised in a protest. And at the time of the protest in this instance, both liquidation instructions have been entered or issued by the Department of Commerce. So those instructions were before Customs and the arguments raised by Thyssen in this case were before Commerce in that instance. I don't think you're addressing my question. My question is, here we have a situation where at the time of the protest the Sunset Review decision was not available to the protester, correct? The Sunset determination became in March of 2013 and the protest was filed in April of 2013. So the Sunset, I'm sorry, maybe I was confused. The Sunset decision was available at the time?  At the time of the protest? Yes, Your Honor, yes. The instructions regarding the revocation proceeding were available at the time the protests were filed. But the critical issue here that I think we should be focusing... So why isn't this a proper protest then? Because it's directed to the interpretation that Customs gave to the liquidation instructions. There was no decision made by Customs that was protestable because if you look at Customs' execution of Commerce's instructions they were a straightforward application of those instructions. Therefore, Customs did not... Assume I disagree with you that this was in any meaningful sense ministerial. The year and a half process where they had to figure out what the word unliquidated entries means in this context. Then is there not 1581A jurisdiction? If you believe that Customs exceeded their ministerial role then there would be 1581A jurisdiction, Your Honor. But what is critical is looking at the April 4th instructions... That makes the jurisdiction depend on how we decide the merits. Certainly the merits are closely tied to this issue of jurisdiction which goes to the fundamental question of what is the meaning of unliquidated. And if we look at the April 4th instructions, those instructions are clear. The tension that arises in this case... No, they're not clear. They use the statutory language and there's a dispute about what the statutory language means. Right? Well, certainly, Tiffson has advanced an argument that unliquidated should be interpreted as liquidated but not final. But that runs contrary to the plain meanings of the term. That may be. But the fact is that the Commerce instructions didn't tell you which interpretation to take, right? They actually did, Your Honor. If we look at the April... How did it do that? If we look at the April 4th instructions, the instructions that came subsequent to the revocation proceeding, the first sentence of the operative paragraph, and this is at Appendix 323... Paragraph 3 of those revocation instructions state, recognize that, in fact, prior instructions had been issued. So the first sentence says, liquidation instructions covering certain entries of core from Germany during the period of August 1st, 2011, through July 31st, 2012, are issued. As noted above, this order has been revoked accordingly all unliquidated entries of core. So by including the term unliquidated, Commerce is recognizing that there is this possibility that prior entries had been liquidated. So the instructions themselves... Where does it tell you what unliquidated means? There's no express definition of unliquidated within the instructions. I agree with you, Your Honor. But the idea that Commerce has included this sentence anticipating that liquidations have already previously occurred for this review period, and then immediately thereafter having a sentence that addresses how the instructions should be effectuated, meaning applying them to unliquidated entries. Commerce is clear in terms of how... Okay, so apart from that argument, is there any definition in this Sunset Review decision that tells us what unliquidated means? No, Your Honor, there's no... Commerce did not define liquidation within Sunset Revocation. If we conclude that Commerce didn't define unliquidated, then do you agree that protest jurisdiction exists? No, Your Honor, because the term liquidated is not an ambiguous term. No, no, no, that's the merits. There's an argument about it. You may be right about the meaning of unliquidated, but what we have is a situation, under my hypothetical, where Commerce hasn't told them what unliquidated means. They're making a decision as to what unliquidated means, so that's a proper protest, isn't it? Certainly, Your Honor. The dichotomy that you're discussing here is whether Customs engage in a substantive active decision, and the LDA Incorporado case, as previously mentioned, discusses this dichotomy. Commerce is the agency that Congress has delegated to ascertain the anti-dumping duty rate. Customs merely enforces those rates. It's there not to make any active or substantive determination. It's merely there to execute the instructions from Commerce. And if Customs is only... of what unliquidated meant here, right? It interpreted pursuant to the plain meaning of the terms. Okay, okay, so let's talk about what unliquidated means in the statute. Why would Congress, in enacting this statute about sunset reviews, have wanted to deny the benefits of the sunset review to a situation in which there had been a liquidation and a protest of the liquidation? Why would Congress want to foreclose the challenge to the liquidation when that's a fairly common feature of this statutory scheme? Wouldn't you expect them to say something more explicit if they wanted to bar protests under these circumstances? Quite to the contrary, Your Honor. I believe liquidation is used so frequently within trade and customs law that it's well understood what it means. Had Congress intended for the revocation decision to encompass these types of entries, it would have drafted 1675d3 with the language saying that the determination should apply to all entries regardless of liquidation status. But my question really is why would Congress, as a matter of policy, and just trying to interpret this statute in the light of, you know, the prevailing structure, why would it want to say, well, even if something's been liquidated and subject to protest, we want to deny the benefits of the sunset review? Why would Congress want to do that? As the trial court noted, sunset determinations are prospective in nature. I mean, the whole framework... Well, they're not prospective in nature in the sense that they apply to entries that occur after the date of the initiation of the sunset review, right? That's true, Your Honor. However, competing concerns to what you've just identified is both agencies' obligations to enforce the anti-dumping laws with respect to the period of review that no interested party requested a period of review. So the operative... Well, no, Your Honor. They're looking at the exact same issues, whether material injury is being subjected on the domestic industry and whether merchandise is being dumped in the United States, being sold at below fair market value. So the order that was in effect during the review period had those two affirmative determinations underlying them. The tension, I think, that the court is wrestling with is the agencies must enforce the anti-dumping duty laws for this period of review when the order was in effect. And the effective date for when the revocation proceeding became effective fell within that review period. Well, the agencies are still obligated to administer the order during that review period, which is why the first set of instructions came out and instructed customs to liquidate all entries. But why wouldn't it make sense for this term, unliquidated, to refer to entries in which the agency has not declared a final calculation and also to ones in which the agency has declared the final calculation of data but the challenge time has not left? So it would be on the model of what goes on in at least one aspect of general law stating, I guess from Schooner Peggy, where if there's a change of law when the matter is still open to challenge, then the change of law applies as long as it was intended to apply to that date. Interpreting unliquidated in that manner would be counter to the plain meaning of the term first and foremost. Why is it so plain meaning? Because if you look at the regulations, I mean, there are two regulations here that seem to be helpful to the appellant here. One is 159.1, which says liquidation means the final computation or ascertainment of duties on entries, and 173.4, which says liquidation includes reliquidation. So, I mean, it seems to me in terms of the definitions that appear in the regulation that the plain meaning argument doesn't work very well. If we take ThyssenKrupp's argument to its logical conclusion, and in fact the liquidations were reverted as a result of the protest, and customs looked at the issue anew at the protest stage, there are no set of instructions that exist that would direct customs to liquidate these entries pursuant to the revocation determination. The April 4th instructions anticipate that liquidations had previously occurred as a result of these prior instructions, and the revocation determination only applies to unliquidated entries. So when U.S. Customs and Border Protection was executing the April 4th instructions, it was merely applying those instructions pursuant to the plain meaning of its terms. And going back to the question of whether customs exceeded its ministerial role, while the agency did issue a ruling letter in this instance and explained its determination, it didn't exceed its ministerial capacity because all the ruling letter was explaining was that the agency was applying these April 4th instructions pursuant to the black letter of its terms. Had the agency adopted ThyssenKrupp's arguments and actually interpreted them the way suggested, that unliquidated actually means the broader universe of claims that actually have been liquidated are non-final, then the agency would actually be doing an active interpretation of that term. It would be interpreting the term unliquidated beyond its plain meaning. And in that instance, the agency would be engaging in an active and substantive determination that would be protestable. Let me try to ask in a better way the same question I think I've tried to ask before. Take as a given for purposes of this question that this does not have a plain meaning. And now we're trying to figure out what the best meaning is of unliquidated. Your basic view is if the agency has acted to say, here are the computation duties, then it's been liquidated, even if there is a live or still timely challenge to be brought or one that has been brought. The alternative is that final doesn't arise until the time for challenges has run or challenges have ended with a final judgment. Why is the latter not a better way to interpret this and in particular better so as to avoid a situation in which entries made after the date at which the government has determined anti-conflict duties are no longer needed are being taxed with duties? That seems a odd consequence unless it's forced by the language. The term liquidated is a term that's used very, very frequently within customs and trade law. And as Judge Dyke has previously noted, if we were to interpret that term beyond its plain meaning, it would alter the application of trade laws in a myriad of contexts. I was expecting a five-page or ten-page section in your brief explaining that, and I didn't see anything that said, here's why chaos or something would result from this other interpretation. I'll provide two contexts or two examples. The Acme case is one example where liquidation had occurred and then a subsequent administrative determination was issued that altered that and where the trial court said, we're not going to apply that determination because your entries have liquidated and the instructions are only applied on liquidated entries. This example here, the example of a revocation proceeding, is another example. But there are myriad examples where the agencies work in tandem, where customs execute substantive determinations within the trade context that commerce has made. And when commerce issues these instructions to customs, oftentimes those instructions turn on the status of an entry, of whether it's been liquidated or unliquidated. And these two examples are just two where if we interpret it beyond its plain meaning and interpret it to include this broader universe of claims, then suddenly all these instructions that the agencies have been issuing to one another, that's when it becomes ambiguous. I mean, if customs were given a set of instructions that had... So why is it that Congress would... Congress certainly was aware of the protest mechanism which it created when it enacted the statute and made reference to unliquidated. Why is it that Congress would want to foreclose a challenge to the legality of the liquidation through the protest method for sunset reviews? Why would it want to make that distinction? Because protests are intended to be directed towards substantive determinations of customs. And revocation decisions are not substantive decisions of customs. They're the decisions of the ITC and commerce. And so therefore the protest remedies were never intended to keep that question open. Except the premise that the protest remedy is directed to determining the legality of the liquidation. And normally if you file a timely protest, you can get a decision from customs as to the legality of the liquidation. And if you don't like the customs final decision, you can go to court and pursue that. Why, given that structure, would Congress want to say, nope, we're not going to allow that with respect to sunset reviews? Because customs isn't the agency that has been directed to make that decision. If Congress wanted to encompass the scenario that you've described, then 1675d3 would have been written to say that the revocation determination applies to all entries, regardless of liquidation status. They didn't include that language. Instead they had this very significant qualifier, unliquidated entries. So Congress, when it was drafting the language of 1675d3, anticipated that there would be circumstances where entries would become liquidated, by which then the determination would not apply to that set of entries. If there's no further questions, I see my time has expired. Thank you, counsel. Mr. LaFranchi has some rebuttal time. I'll give you a chance. Thank you, your honors. I'd just like to make a couple of points in rebuttal. First, there was a point made that if we allowed the interpretation that we're advancing, there would be chaos. It would turn the system upside down. That's just simply not true. What we are talking about is a limited remedy here where the person first has to file a protest and then has to advance the protest based upon some event or some change or miscalculation that they think is appropriate. We don't view that as chaos. We view that as using the mechanism that was put in place for exactly that purpose. Does your argument depend on the relation between your filing of these protests in April and May 2013 and the, what is it, October and November liquidation events? I'm not sure I understand what you mean by the relation. How long did you have to challenge the November 16th liquidation and the December 21st? The deadline was coming up. We had six months from the original. Would your argument be any different if you had gone past, I'm going to say August of 2013? You had six months? We had six months. Right, so if you had gone past six months. If we had gone past six months, I don't see that we would have had a ground to protest. Because at that point, the original liquidations would be final. Would be final. The period would have run and we wouldn't have identified a reason to protest. So at that point, we had to file within that six-month time period. So it's the combination of the time for protest to the original liquidations not having run plus the legal assertion that an intervening change of law is a ground for a protest of an already occurred agency computation of duties. Correct, either an intervening change in law, change in practice, or discovery of a mistake as long as it was within that time period. So it is limited in that sense. And I see my time is up. Do you have a final thought? I had a final thought, which is that we think Congress did not intend this result. We think Congress is aware that there's protests and there is no reasonable reason why they would try to draw an artificial distinction between an entry that is unliquidated as opposed to one that has been liquidated in a prefatory manner but is still subject to protest. If you look at the protest statute, it's pretty broad in terms of the grounds that can be asserted. It can be a mistake, an inadvertence, clerical error, and all of the decisions. Including illegality. Including illegality. The legality of all findings and orders connected with that liquidation. So we think it clearly should be included within this context, particularly in the case of the Sunset Review, which were meant to affirmatively cut off duties no more than five years afterwards. Thank you, counsel. Thank you. We'll take the case on your behalf. All rise.